

FILED
2013 MAR 18  PM 4: 08
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
        DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

BASKIN-ROBBINS FRANCHISED §
SHOPS, LLC (successor in interest of §
BASKIN-ROBBINS USA, CO.) and §
BR IP HOLDER LLC, §
§
　　　　Plaintiffs, §
§
VS. §
§
COOL ENTERPRISES, LLC, MARK E. §
SCHIFFGENS, ADAM ZARAFSHANI, §
and CONLETH S. O'CONNELL, JR., §
jointly and severally, §
§
　　　　Defendants. §

**A13CV0228 LY**

CIVIL ACTION NO. _____

## PLAINTIFFS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

　　　　Plaintiffs Baskin-Robbins Franchised Shops, LLC, successor in interest of Baskin-Robbins USA, Co. ("BRF"), and BR IP Holder, LLC ("BR Holder") (BRF and BR Holder are referred to collectively as "Plaintiffs" or "Baskin-Robbins"), file this Complaint for Damages and Injunctive Relief ("Complaint") against Defendants Cool Enterprises, LLC, ("Cool Enterprises"), Mark E. Schiffgens ("Schiffgens"), Adam Zarafshani ("Zarafshani") and Conleth S. O'Connell, Jr. ("O'Connell") (Cool Enterprises, Schiffgens, Zarafshani and O'Connell are referred to collectively as "Defendants").　Plaintiffs request monetary damages and injunctive relief pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and related state law.　In support of the relief requested, Plaintiffs state:

## JURISDICTION

1.      This action arises, in part, under Chapter 22 of Title 15 of the United States Code, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), and presents, *inter alia*, federal questions involving unfair competition and trademark infringements.

2.      This Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1116(a) and 1121(a), and 28 U.S.C. §§ 1331 and 1338(a).

3.      This Court also has supplemental jurisdiction over the related state law claims of Baskin-Robbins pursuant to 28 U.S.C. § 1367.

## VENUE

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this is the judicial district (1) where the Defendants reside, (2) in which a substantial part of the events or omissions giving rise to Baskin-Robbins' claims occurred, and (3) in which the Defendants are subject to personal jurisdiction.

## PARTIES

A.      **Plaintiffs.**

5.      Plaintiff BRF is a limited liability company that is organized and existing under the laws of the State of Delaware and maintains its principal place of business at 130 Royall Street, Canton, MA 02021.

6.      Plaintiff BR Holder is a limited liability company that is organized and existing under the laws of the State of Delaware and maintains its principal place of business at 130 Royall Street, Canton, MA 02021.

7.      BR Holder is the owner and holder of all of the trademarks, copyrights, and patents relating to the trade name "Baskin-Robbins", and has licensed the use of such trademarks, copyrights, and patents to BRF, which entity is permitted to license their use by various franchisees.

8.      BRF and BR Holder are authorized to transact business in the State of Texas.

B.      **Defendants.**

9.      Defendant Cool Enterprises is a limited liability company organized and existing under the laws of the State of Texas, and maintains a domicile and mailing address at 4210 Spicewood Springs Road, Suite 205, Austin, Texas 78759.   Cool Enterprises may be served with process through its registered agent, Adam Zarafshani, at 4210 Spicewood Springs Road, Suite 205, Austin, Texas 78759.

10.     Defendant Schiffgens is a natural person, who is sued individually as guarantor of and under the Franchise Agreement (defined below).    Schiffgens may be served with process at 2506 Roxmoor Drive, Austin, Texas 78723.

11.     Defendant Zarafshani is a natural person, who is sued individually, also as a guarantor of and under the Franchise Agreement.  Zarafshani may be served with process at 4210 Spicewood Springs Road, Suite 205, Austin, Texas 78759.

12.     Defendant O'Connell is a natural person, who is sued individually, also as a guarantor of and under the Franchise Agreement.  O'Connell may be served with process at 10808 Straw Flower Drive, Austin, Texas 78733.

## BASKIN-ROBBINS' TRADEMARKS, SERVICE MARKS, AND TRADE SECRETS

13.     BRF is engaged in the business of, and has acquired valuable experience and skill in, developing and operating national franchises involving the production, merchandising, and sale of ice cream, frozen yogurt, ice milk, sherbets, smoothies, soda fountain items, frozen desserts, and other related products through the use of specially designed building, equipment, accessories, identification schemes, products, management programs, standards, specifications, and marks (collectively, the "Baskin-Robbins System").

14.     BRF is engaged in the business of franchising independent businesspersons to operate ice cream shops under the name "Baskin-Robbins" throughout the United States, including in the State of Texas.

15.     BRF franchisees are licensed to use the trade names, service marks, and trademarks owned by BR Holder, and to operate under the Baskin-Robbins System.

16.     BRF has established a reputation for high and uniform standards of quality, cleanliness, appearance, and service that has created goodwill of immeasurable value.

17.     At all relevant times, Baskin-Robbins have continually used the name "Baskin-Robbins" as a trade name and service mark in connection with the operation of licensed Baskin-Robbins stores.

18.     BR Holder is the owner of numerous marks registered on the principal register of the United States Patent and Trademark Office (collectively, the "Baskin-Robbins Marks"), which include:

| MARK | REG. NO. | ISSUED |
|---|---|---|
| BASKIN-ROBBINS | 1185045 | 1/5/82 |
| BASKIN-ROBBINS | 1371672 | 11/19/85 |
| BASKIN 31 ROBBINS | 3124983 | 8/1/06 |
| BASKIN 31 ROBBINS | 3124982 | 8/1/06 |
| 31 | 0796902 | 9/28/65 |
| BASKIN 31 (IN ARC) ROBBINS | 1783116 | 7/20/93 |

19.    As evidenced by their registration with the United States Patent and Trademark Office and the Affidavit of Gary Zullig ("Zullig Affidavit"), attached as Exhibit A to the Plaintiffs' Memorandum in Support of Their Application for Preliminary Injunction and incorporated herein by reference, these registrations, and all other registrations for the Baskin-Robbins Marks, are lawfully owned by BR Holder and are subsisting in full force and effect.[1]

20.    Each registration set forth above is prima facie evidence of the validity of the registration, BR Holder's ownership of the Baskin-Robbins Marks, and its exclusive right to use those marks in commerce on the services and goods listed above, as provided in 15 U.S.C. §§ 1057(b) and 1115(a).

21.    The Baskin-Robbins Marks have become valuable assets of substantial and inestimable worth to Baskin-Robbins.

---

[1] References to Zullig Affidavit are indicated by "Zullig Aff." followed by the paragraph or exhibit number to which reference is made.

22.     The Baskin-Robbins Marks are symbols of quality goods dispensed by Baskin-Robbins' national and international chain of franchised stores.

23.     BRF and BR Holder have a vital economic interest in protecting the Baskin-Robbins name and the Baskin-Robbins Marks.

24.     The preservation and protection of the Baskin-Robbins name and the Baskin-Robbins Marks is essential to the maintenance of Baskin-Robbins' quality stores and the goodwill and reputation associated with them.

25.     Baskin-Robbins' prospects for continued success depends upon the ability to maintain the confidentiality of their trade secrets and the exclusive use of the Baskin-Robbins System and the Baskin-Robbins Marks.

26.     Baskin-Robbins have used the Baskin-Robbins Marks for more than fifty (50) years.

27.     Further, Baskin-Robbins have been able to compete successfully in the Austin, Texas, marketplace against other sellers of ice cream and related products because they have retained exclusive possession and use of their confidential and valuable information, including the procedures for operating a franchise utilizing the Baskin-Robbins System.

## THE FRANCHISE AT ISSUE

28.     In order to make its food products available to the general public, BRF licenses franchisees to operate ice cream shops utilizing the Baskin-Robbins System.

---

29.     Baskin-Robbins allow the franchisees to make use of the Baskin-Robbins Marks and to enjoy the benefits of the Baskin-Robbins Marks, which have a distinctive and valuable significance to the public.

30.     BRF and BR Holder grant franchises to specific natural and/or juridical persons selected by Baskin-Robbins.

31.     The franchise agreements and related documents govern the business relationship between BRF and its franchisees, which include, but are not limited to, the conditional right to use the Baskin-Robbins System in the operation of a Baskin-Robbins store, the duration of the franchise relationship, and the obligations and duties of the persons selected to operate such stores.

32.     BRF supervises and controls the franchisees' use of the Baskin-Robbins trade name and the Baskin-Robbins Marks through franchise agreements, which grant licensees the conditional rights to operate Baskin-Robbins stores using the Baskin-Robbins Marks, and which require franchisees to meet and comply with certain policies to ensure quality products and service to the public.

33.     On or about August 30, 2003, Cool Enterprises and BRF entered into a Franchise Agreement (the "Franchise Agreement") that granted Cool Enterprises a franchise to operate a specific Baskin-Robbins store located at  12407 N. Mopac Expressway, Suite 115, Austin, Texas 78758 (the "Store"), utilizing the Baskin-Robbins System.

34.     A true and correct copy of the Franchise Agreement is attached to the Zullig Affidavit as Exhibit "A" and incorporated herein by reference.

35.     Schiffgens and Zarafshani signed the Franchise Agreement as the Managing Members of Cool Enterprises.     However, Schiffgens, Zarafshani and O'Connell individually guaranteed payment and performance of all contractual obligations of Cool Enterprises under the Franchise Agreement.

36.     The Franchise Agreement includes certain Terms and Conditions in which Cool Enterprises acknowledged and agreed, among other things:

> a.     to pay to Baskin-Robbins a weekly continuing franchise fee in an amount equal to five and nine tenths percent (5.9%) of the gross sales from operations of the Store;

> b.     to make weekly contributions to the national advertising fund in an amount equal to five percent (5%) of the gross sales of the franchise operations of the Store;

> c.     to make all payments under the Franchise Agreement and pay interest at a rate of one and one-half percent (1.5%) per month for any unpaid amounts;

> d.     to submit to Baskin-Robbins a weekly statement of gross sales for the franchise operations of the Store;

> e.     that failure to pay service fees to Baskin-Robbins is a material breach of the Franchise Agreement if those amounts are past due more than seven days, and that Baskin-Robbins is entitled to terminate the Franchise Agreement upon such a material breach;

> f.     that unpaid service fees due to Baskin-Robbins shall bear interest at the rate of one and one-half percent (1.5%) per month or the highest rate of interest permitted by law;

> g.     that upon termination of the Franchise Agreement, Cool Enterprises shall immediately cease operations of the Store as a Baskin-Robbins franchisee, and shall not thereafter, directly or indirectly, represent to the public or hold themselves out as present or former franchisees of Baskin-Robbins;

> h.     that upon termination of the Franchise Agreement, Cool Enterprises shall immediately and permanently cease to use, by advertising or in any other manner whatsoever, any feature or method associated with the Baskin-Robbins

System, any or all of the Baskin-Robbins Marks and any other trade secrets, confidential information, operating manuals, slogans, trade dress, signs, symbols or devices which are part of Baskin-Robbins System or are otherwise used in connection with the operation of the restaurant;

      i.     that upon termination of the Franchise Agreement, Cool Enterprises shall immediately return to Baskin-Bobbins all operating manuals, plans, specifications, and other materials in Cool Enterprise' possession containing information prepared by Baskin-Robbins and relative to the operation of the restaurant, and all copies thereof (all of which are acknowledged to be Baskin-Robbins property), and shall retain no copy or record of any of the foregoing, except Cool Enterprises' copy of the Franchise Agreement, any correspondence between the parties, and any other documents which Cool Enterprises reasonably needs for compliance with any provision of law;

      j.     that upon termination of the Franchise Agreement Cool Enterprises shall remove from the restaurant's premises and from any equipment, signs, trade fixtures, furnishings and other personal property and return to Baskin-Robbins, all of the Baskin-Robbins marks or other indicia of Baskin-Robbins, and shall disconnect, withdraw and/or terminate, within five (5) days after termination or expiration of the Franchise Agreement, any telephone listings and/or fictitious name registration containing any part of the Baskin-Robbins Marks.  Cool Enterprises appointed Baskin-Robbins as its attorney-in-fact, in the name of Cool Enterprises, to do any act necessary to effect the intent of this subparagraph;

      k.     that Cool Enterprises shall, upon request within thirty days from the date of termination due to default, sell to Baskin-Robbins any or all of the furniture, fixtures, and equipment ("Equipment") at its then-current fair market value, less any indebtedness on the Equipment and indebtedness owed to Baskin-Robbins.  Nothing contained herein, however, shall be construed to entitle Cool Enterprises to be released from liability for such unpaid balance or indebtedness, if any, in excess of the portion of the purchase price applied for payment of such debts;

      l.     that upon termination of the Franchise Agreement, Cool Enterprises shall, at Baskin-Robbins' option by notice to Cool Enterprises within thirty (30) days from the date of termination or expiration, assign to Baskin-Robbins any interest that Cool Enterprises has in the lease or any other agreement related to the Store.  If Baskin-Robbins does not elect to exercise its option to acquire the lease for the Store, Cool Enterprises shall make such modifications or alterations to the restaurant's premises immediately upon termination or expiration of the Franchise Agreement as may be necessary to distinguish the appearance of the Store from that of other units in the Baskin-Robbins System, and shall make such specific

additional changes thereto as Baskin-Robbins may reasonably require for that purpose.  In the event Cool Enterprises fails or refuses to comply with these requirements, Baskin-Robbins shall have the right to enter the Store, without being guilty of trespass or any other tort, for the purpose of making such changes as may be required, at the expense of Cool Enterprises, which expense Cool Enterprises agrees to pay upon demand;

      m.    that upon termination of the Franchise Agreement, Cool Enterprises shall pay to Baskin-Robbins all damages, costs and expenses, including, but not limited to, reasonable investigation and attorneys' fees and other reasonable expenses and costs such as travel costs and payroll expenses for Baskin-Robbins employees, incurred in obtaining injunctive or other relief for the enforcement of any provisions of the Franchise Agreement;

      n.    that upon termination of the Franchise Agreement, Cool Enterprises shall continue to comply with the terms of the Franchise Agreement, for the Post-Term Period specified therein.  If Cool Enterprises begins to operate any other business wherever situated, Cool Enterprises shall not use, in connection with such other business or the promotion thereof, any reproduction counterfeit, copy or colorable imitation of any of Baskin-Robbins Marks or trade dress; and Cool Enterprises shall not utilize any designation of origin or description or representation which falsely suggests or represent any association or connection with Baskin-Robbins whether or not constituting unfair competition;

      o.    that Cool Enterprises' failure to comply with the terms of the Franchise Agreement would cause irreparable damage to Baskin-Robbins for which no adequate remedy at law may be available, and that in the event of  Cool Enterprises' breach or threatened breach of any of the terms of the Franchise Agreement, Baskin-Robbins shall therefore be forthwith entitled to an injunction restraining such breach and/or to a decree of specific performance, without showing or proving any actual damage or irreparable harm or lack of an adequate remedy at law, and without the requirement for the posting of bond;

      p.    that any failure of Baskin-Robbins to exercise any power reserved to it under the Franchise Agreement, or to insist upon strict compliance by Cool Enterprises with any term, covenant or condition in the Franchise Agreement, and any waiver by Baskin-Robbins of any breach of a term, covenant or condition shall not be deemed to be a waiver of such term, covenant or condition of the Franchise Agreement; and

      q.    that, for a period of two (2) years after termination of the Franchise Agreement, Cool Enterprises shall not own, maintain, engage in, be employed for, or have any interest in any other business which sells or offers to sell the same or

substantially similar products to the type Baskin-Robbins requires Cool Enterprises to offer at the Store.

37.     At the time the Franchise Agreement was executed, Schiffgens, Zarafshani and O'Connell signed a personal guarantee by which they guaranteed the full payment of Cool Enterprises' monetary obligations to Baskin-Robbins and the performance of all of Cool Enterprises' obligations under the Franchise Agreement, and agreed that the Franchise Agreement would be binding on them, personally (the "Franchise Guaranty").

38.     The Franchise Guaranty is included in the Franchise Agreement, which is attached as Exhibit "A" to the Affidavit and incorporated herein by reference.  The Zullig Affidavit is attached to the Plaintiffs' Memorandum in Support of their Application for Preliminary Injunction filed herewith and incorporated herein by reference.

39.     Upon execution of the Franchise Agreement, Cool Enterprises began selling Baskin-Robbins' products to the public as franchisee.

40.     Baskin-Robbins have duly performed all of their obligations under the Franchise Agreement and otherwise have complied with all conditions precedent to bringing this action.

41.     By accepting the franchise to operate the Store, Cool Enterprises, in addition to receiving the right to utilize the Baskin-Robbins System, obtained the right to use the Baskin-Robbins Marks and all other trademarks, copyrights and patents utilized by Baskin-Robbins.

42.     Cool Enterprises also obtained the right to the use of confidential and valuable information existing at the time of the execution of the Franchise Agreement and that might be acquired after the execution of the Franchise Agreement.

43.     The confidential and valuable information available to Cool Enterprises as a franchisee, included, without limitation, the information contained in Baskin-Robbins' operating manuals, which has not been and is not obtainable from sources other than Baskin-Robbins and is disclosed only to Baskin-Robbins' franchisees for the purpose of allowing Baskin-Robbins' authorized franchisees to operate their franchises in conformance with Baskin-Robbins' requirements.

44.     Confidential and valuable information that Baskin-Robbins make available to the Defendants and other franchisees is disclosed in trust.

45.     Cool Enterprises and Baskin-Robbins did not enter into an employee/employer relationship.  Cool Enterprises hired, fired, and supervised its own employees and bore all payroll expenses.

46.     Although Baskin-Robbins periodically suggest promotional pricing and advertised discount offers (*e.g.*, $0.31 scoop night, or buy one, get one), Cool Enterprises set its own prices.

47.     Cool Enterprises set its own business hours.

48.     Baskin-Robbins did not lease the Equipment or any other personal or intangible property, movable or immovable, to Cool Enterprises, Schiffgens, Zarafshani, or O'Connell.

49.     Cool Enterprises purchased its own supplies and equipment (other than startup supplies).

50.     Cool Enterprises maintained its own insurance and workers compensation coverage.

51.     Cool Enterprises kept its own books and financial records.

52.     Cool Enterprises set its own policies on the extension of credit to customers.

53.     The Defendants bore the risk of non-payment by customers.

## THE NOTICE TO CURE

54.     With respect to the Store, the Defendants became and are delinquent under the Franchise Agreement for failure to pay, *inter alia*, the required franchise fees, advertising fees, and attorney's fees.  As of February 27, 2013, the Defendants owed Baskin-Robbins $25,262.69 in franchise and advertising fees, $1,024.98 in attorney's fees, and interest at the rate of eighteen percent (18%) on all past due amounts.

55.     On or about December 11, 2012, Baskin-Robbins sent the Defendants a written notice to cure, advising Cool Enterprises of its defaults under the Franchise Agreement for the Store for failure to pay amounts due thereunder and demanding cure of same (the "Notice to Cure").

56.     A true and correct copy of the Notice to Cure is attached to the Zullig Affidavit as Exhibit "B."

57.     Pursuant to the Notice of Cure, Cool Enterprises was given seven (7) days to cure its defaults.

58.     The Notice to Cure was transmitted to Defendants by Federal Express standard overnight delivery, tracking no. 794274861059.

59.     Defendants received the Notice to Cure at 4210 Spicewood Springs Road, Suite 205, Austin, Texas 78759 at or about 1:46 p.m. C.S.T. on December 12, 2012.

60.     Defendants did not cure their defaults within the seven (7) day period following receipt of the Notice to Cure.

## THE TERMINATION NOTICE

61.     On January 10, 2013, Baskin-Robbins sent to Defendants written notice of the decision to terminate the Franchise Agreement for the Store (the "Notice of Termination"). The Notice of Termination was transmitted to Defendants by Federal Express standard overnight delivery, tracking no. 794486552191.  Defendants received the Notice of Termination at 4210 Spicewood Springs Road, Suite 205, Austin, Texas 78759 at or about 1:10 p.m. C.S.T. on January 11, 2013.  A true and correct copy of the Notice of Termination and the Federal Express tracking update, reflecting the fact that Cool Enterprises received the Notice of Termination on January 11, 2013, is attached to the Zullig Affidavit as Exhibit "C."

62.     In the written notice, Defendants were advised that since they had not cured their defaults under the Franchise Agreement, said Franchise Agreement was thereby terminated effective immediately upon the receipt of the Notice of Termination.

63.     Further, in the Notice of Termination, Baskin-Robbins made demand upon Defendants to immediately cease to use, by advertising or in any other manner whatsoever, any methods associated with the Baskin-Robbins System or the Baskin-

Robbins Marks and any and all Baskin-Robbins Marks, trade secrets, confidential information, operating manuals, slogans, signs, symbols or devices forming part of the Baskin-Robbins System, or otherwise used in connection with the operation of the Store at 12407 N. Mopac Expressway, Suite 115, Austin, Texas 78758, as a Baskin-Robbins franchise.

64.     Further, Baskin-Robbins made demand upon Defendants to immediately return all operating manuals, plans, specifications and other materials containing information prepared by Baskin-Robbins and relative to the operation of the Store.

65.     The Defendants did not comply with the demands in the Notice of Termination.

66.     The Defendants have not paid Baskin-Robbins for amounts due and owing under the Franchise Agreement.

67.     Notwithstanding the Defendants' non-performance under the Franchise Agreement, the resulting termination of the Franchise Agreement, and the Notice of Termination, the Defendants have continued to operate the Store, using the Baskin-Robbins System and the Baskin-Robbins Marks as a Baskin-Robbins franchise without having any right or license to do so.

68.     The Defendants' continuing unauthorized use of the Baskin-Robbins System and Baskin-Robbins Marks is causing Baskin-Robbins irreparable harm.

## FIRST CLAIM
## TRADEMARK INFRINGEMENT 15 U.S.C. § 1114(1)
## AND STATE LAW AGAINST ALL DEFENDANTS

69.     Baskin-Robbins reallege and incorporate herein by reference the allegations set forth in paragraphs 1 through 68, inclusive.

70.     Baskin-Robbins' Federal Trademark Registrations, such as those referred to above, are in full force and effect.

71.     The Baskin-Robbins Marks have not been abandoned and are widely used by Baskin-Robbins throughout the United States.

72.     Baskin-Robbins intend to preserve and maintain the rights to the Baskin-Robbins Marks and to continue to use said marks for the operations of their stores.

73.     The Defendants have continued to use the Baskin-Robbins Marks without the consent of Baskin-Robbins after termination of the Franchise Agreement, in violation of the Franchise Agreement.

74.     The use in commerce by the Defendants of the Baskin-Robbins marks and Baskin-Robbins' trade name without consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of the Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Baskin-Robbins.

75.     Such continued use of the Baskin-Robbins marks and Baskin-Robbins' trade name infringes upon Baskin-Robbins' exclusive rights in the Baskin-Robbins marks and Baskin-Robbins' trade name under § 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law.

76.     Upon information and belief, the Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

77.     Baskin-Robbins have no adequate remedy at law.

78.     The Defendants' conduct has caused, and if not enjoined, will continue to cause, irreparable harm and damage to the rights of Baskin-Robbins in the Baskin-Robbins Marks and to the business, reputation, and goodwill of Baskin-Robbins.

79.     As a direct and proximate result of the Defendants' action, Baskin-Robbins have incurred and continue to incur monetary damages in an amount that has yet to be determined.

80.     By reason of the foregoing, pursuant to § 34 of the Lanham Act, 15 U.S.C. § 1116, and applicable state law, Baskin-Robbins are entitled to preliminary and permanent injunctive relief against the Defendants, restraining further acts of trademark infringement.

81.     By reason of the foregoing, pursuant to § 35 of the Lanham Act, 15 U.S.C. § 1117(a), Baskin-Robbins are entitled to a judgment for monetary damages (in an amount that has yet to be determined) sustained by Baskin-Robbins, the Defendants' profits, the costs of this action, and reasonable attorneys' fees.

## SECOND CLAIM
### TRADE DRESS INFRINGEMENT 15 U.S.C. § 1125
### AND STATE LAW AGAINST ALL DEFENDANTS

82.     Baskin-Robbins reallege and incorporate herein by reference the allegations set forth in paragraphs 1 through 81, inclusive.

83.     The Defendants' store is indentified by signs, exterior appearance, and other items on which the words "Baskin-Robbins" and "Baskin-Robbins 31" appear in the same lettering style and in the same distinctive pink color scheme as Baskin-Robbins use for the ice cream stores operated by lawful Baskin-Robbins licensees.

84.     The Defendants' use of the trade dress that is identical or confusingly similar to Baskin-Robbins' trade dress constitutes a false designation of the origin the store which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of the Defendants' stores with the Baskin-Robbins stores operated by lawful Baskin-Robbins licensees.

85.     The Defendants' adoption of the Baskin-Robbins trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and applicable state law.

86.     Upon information and belief, the Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

87.     As a result of the Defendants' infringement of Baskin-Robbins' trade dress, Baskin-Robbins have suffered and continue to suffer irreparable injury and have incurred and continues to incur monetary damages in an amount that has yet to be determined.

88.     By reason of the foregoing, pursuant to § 34 of the Lanham Act, 15 U.S.C. § 1116, and applicable state law, Baskin-Robbins are entitled to preliminary and permanent injunctive relief against the Defendants, restraining further acts of trade dress infringement.

89.     By reason of the foregoing, pursuant to § 35 of the Lanham Act, 15 U.S.C. § 1117(a), Baskin-Robbins are entitled to a judgment for monetary damages (in an amount that has yet to be determined) sustained by Baskin-Robbins, the Defendants' profits, the costs of this action, and reasonable attorneys' fees.

### THIRD CLAIM
### UNFAIR COMPETITION 15 U.S.C. § 1125 AND
### STATE LAW AGAINST ALL DEFENDANTS

90.     Baskin-Robbins reallege and incorporate herein by reference the allegations set forth in paragraphs 1 through 89, inclusive.

91.     The use in commerce by Defendants of the Baskin-Robbins Marks without consent is likely to confuse, or to cause mistake, or to deceive the public as to origin, sponsorship, or approval of its goods, services, or commercial activities.

92.     Such unauthorized use of the Baskin-Robbins Marks violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law.

93.     Upon information and belief, the Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

94.     As a result of the Defendants' unfair competition, Baskin-Robbins are suffering and continue to suffer substantial and irreparable injury to the goodwill associated with the Baskin-Robbins Marks, and have incurred and continue to incur monetary damages in an amount yet to be determined.

95.     By reason of the foregoing, pursuant to § 34 of the Lanham Act, 15 U.S.C. § 1116, and applicable state law, Baskin-Robbins are entitled to preliminary and permanent injunctive relief against the Defendants, restraining further acts of unfair competition.

96.     By reason of the foregoing, pursuant to § 35 of the Lanham Act, 15 U.S.C. § 1117(a), Baskin-Robbins are entitled to a judgment for monetary damages (in an amount that has yet to be determined) sustained by Baskin-Robbins, the Defendants' profits, the costs of this action, and reasonable attorneys' fees.

## FOURTH CLAIM
## MISAPPROPRIATION OF TRADE SECRETS AGAINST ALL DEFENDANTS

97.    Baskin-Robbins reallege and incorporate herein by reference the allegations set forth in paragraphs 1 through 96, inclusive.

98.    As a result of the termination of the Franchise Agreement due to Defendants' uncured default, Defendants' possession of Baskin-Robbins' confidential, trade secret, and proprietary information as described herein, including but not limited to, the Baskin-Robbins System, is wrongful and unauthorized.  Defendants have retained and are using all of Baskin-Robbins' confidential, trade secret, and proprietary information, including but not limited to the Baskin-Robbins Systems manuals.  Defendants have also failed and refused to return the same to Baskin-Robbins.

99.    As a direct and proximate result of Defendants' wrongful conduct, Baskin-Robbins have suffered and will continue to suffer irreparable harm for which they seek a preliminary and permanent injunction as well as damages.

## FIFTH CLAIM
## BREACH OF CONTRACT AGAINST COOL ENTERPRISES

100.    Baskin-Robbins reallege and incorporate herein by reference the allegations set forth in paragraphs 1 through 99, inclusive.

101.    Baskin-Robbins have performed all promises required on their part to have been performed under the terms of the Franchise Agreement except to the extent prevented from doing so by the Defendants.

102.    Baskin-Robbins have complied with all applicable laws and regulations that govern franchise sales and relations.

103.   Cool Enterprises has breached the Franchise Agreement because (i) it is delinquent in advertising fees, franchise fees, and attorney's fees owed under the Franchise Agreement; and (ii) it has violated the Franchise Agreement by using the Baskin-Robbins Marks, services marks, trade names, trade secrets, and other elements of the Baskin-Robbins System after termination of the franchise.

104.   As a result of Cool Enterprises' breach of the Franchise Agreement, Baskin-Robbins have suffered and continues to suffer irreparable harm to their reputation.

105.   Although Cool Enterprises appears to the general public to be affiliated with the Baskin-Robbins System and to be selling Baskin-Robbins products and offering Baskin-Robbins services, Cool Enterprises is no longer subject to the trademark controls and operations directions contained in the Franchise Agreement.

106.   These breaches are material breaches of the Franchise Agreement that go to the core of Baskin-Robbins' right to control the use of their trade names, trade secrets, and the Baskin-Robbins Marks, and to ensure the quality of the products distributed under their names.

107.   This conduct has interfered with the continued goodwill of the Baskin-Robbins system with the public, which relies upon and has come to trust in Baskin-Robbins good reputation.

108.   Accordingly, Baskin-Robbins are entitled to a money judgment against Cool Enterprises for any and all amounts of monetary damages (which may be proven at any hearing, proceeding, or trial in this civil action, including, but not limited to,

attorneys' fees under the terms of the Franchise Agreement) caused by Cool Enterprises' material breaches of the Franchise Agreement.

## SIXTH CLAIM
## BREACH OF FRANCHISE GUARANTY AGAINST MARK E. SCHIFFGENS, ADAM ZARAFSHANI AND CONLETH S. O'CONNELL, JR.

109.    Baskin-Robbins reallege and incorporate herein by reference the allegations set forth in paragraphs 1 through 108, inclusive.

110.    Schiffgens, Zarafshani and O'Connell have breached the Franchise Guaranty by failing to pay the monies due to Baskin-Robbins under the Franchise Agreement and the Franchise Guaranty, and by failing to secure performance of all of Cool Enterprises' other obligations under the Franchise Agreement.

111.    Accordingly, Baskin-Robbins are entitled to a money judgment against Schiffgens, Zarafshani and O'Connell pursuant to the Franchise Guaranty for any and all amounts of monetary damages (which may be proven at any hearing, proceeding, or trial in this civil action, including, but not limited to, attorneys' fees under the terms of the Franchise Agreement) caused by Cool Enterprises' material breaches of the Franchise Agreement, as well as the breaches by Schiffgens, Zarafshani and O'Connell under the Franchise Guaranty.

## SEVENTH CLAIM
## UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

112.    Baskin-Robbins reallege and incorporate herein by reference the allegations set forth in paragraphs 1 through 111, inclusive.

113.   The Defendants' conduct after termination of the Franchise Agreement in distribution, advertising, sale, offering for sale, and/or other use of the infringing products and services bearing the Baskin-Robbins Marks has enriched the Defendants without cause.

114.   Accordingly, Baskin-Robbins are entitled to a money judgment for any and all profits derived from the Defendants' unlawful use of the Baskin-Robbins System and Baskin-Robbins Marks.

## EIGHTH CLAIM
## ATTORNEYS' FEES AGAINST ALL DEFENDANTS

115.   Baskin-Robbins reallege and incorporate herein by reference the allegations set forth in paragraphs 1 through 114, inclusive.

116.   As a result of Defendants' conduct and breaches as described herein, Baskin-Robbins has been required to retain and pay the undersigned counsel of record. Pursuant to the terms of the Franchise Agreement and Franchise Guaranty and under Tex. Civ. Prac. & Rem. Code § 38.001 *et seq.*  Baskin-Robbins is entitled to, and hereby seeks recovery of its reasonable and necessary attorneys' fees from the Defendants.

## RESERVATION OF RIGHTS

117.   Baskin-Robbins reserve the rights to assert additional claims, whether arising under federal or state law, relating to the Defendants' unlawful conducts complained of herein which may be learned of through discovery in this civil action.

## RELIEF REQUESTED

118.   Plaintiffs request the following relief:

A.      judgment against the Defendants for violations of §§ 32 and 43 of the Lanham Act by their unauthorized use of the Baskin-Robbins Marks following termination of the Franchise Agreement;

B.      preliminary and permanent injunction against the Defendants, as well as their agents, employees, representatives, and all persons acting in concert with them or under their control, under which they are enjoined and/or required to:

      i.      immediately cease to hold themselves out as franchisees of Baskin-Robbins, and shall not, directly or indirectly, represent to the public or hold themselves out as present or former franchisees of Baskin-Robbins;

      ii.      immediately cease to use, in advertising or in any other manner whatsoever, and refrain from disclosing, revealing, or publishing any feature of method associated with the Baskin-Robbins System, any Baskin-Robbins Marks, and any other trade names, trademarks, trade secrets, confidential information, operating manuals, slogans, trade dress, signs, symbols, or devices which are part of the Baskin-Robbins System;

      iii.      immediately return to Baskin-Robbins all operating manuals, plans, specifications, and other materials in their possession containing information prepared by Baskin-Robbins, and all copies thereof, and not retain, copy, or record of any of the foregoing, except the Defendants' copy of the Franchise Agreement, any correspondence between the parties, and any other documents reasonably needed for compliance with any provision of law;

iv.      immediately remove from the Store at 12407 N. Mopac Expressway, Suite 115, Austin, Texas 78758, and from any Equipment, signs, trade fixtures, furnishings and other personal property and return to Baskin-Robbins, all of the Baskin-Robbins Marks or other indicia of Baskin-Robbins, and disconnect, withdraw and/or terminate any telephone listings and/or fictitious name registration containing any part of the Baskin-Robbins Marks; upon demand, assign to Baskin-Robbins any telephone number used in the operation of the Store if such number is listed in the directory using any of the Baskin-Robbins Marks;

v.       immediately destroy or surrender to Baskin-Robbins all signs, stationery, forms, printed matter, advertising, and paper goods containing the Baskin-Robbins Marks and any name or mark containing the designation "Baskin-Robbins" and every other deceptively similar name and mark, or any other designation indicating or intending to indicate that they are an authorized Baskin-Robbins franchisee;

vi.      make such modifications or alterations to the Store as may be necessary to distinguish it from that of units in the Baskin-Robbins System;

vii.     refrain from using, in connection with any business or the promotion thereof, any reproduction, counterfeit, copy or colorable imitation of any of the Baskin-Robbins Marks or trade dress;

viii.    refrain from utilizing any designation of origin or description or representation that falsely suggests or represents any association or connection by Defendants or the Store with Baskin-Robbins;

ix.     refrain from preventing or limiting authorized representative of Baskin-Robbins from access to books, records, and accounts of the Defendants to ascertain the extent  of Baskin-Robbins' damages as a result of the Defendants' conduct; and

x.     refrain, for a two (2) year period following termination of the Franchise Agreement and within a five (5) miles radius of the Premises, from owning, maintaining, being employed by, or having any interest in any other business which sells or offers to sell the same or substantially similar products to the type Baskin-Robbins requires to be offered at the Premises;

C.     recovery from the Defendants, jointly and severally, of statutory, contractual, and actual damages resulting from the Defendants' breach of contract, trademark infringement, misappropriation of trade secrets, and unfair competition;

D.     an accounting of the Defendants' profits and for disgorgement of those profits to Baskin-Robbins pursuant to 15 U.S.C. § 1117;

E.     attorneys' fees, costs of court, and interest at the maximum rate allowed by law; and

F.     all other and further relief, general and special, at law or in equity, to which Plaintiffs may be entitled.

Respectfully submitted,

THE BUTLER FIRM, PLLC

By: _____
   Clay A. Butler
   Texas Bar No. 24054602

1601 Rio Grande, Suite 331
Austin, TX 78701
Phone: (512) 992-0439
Fax: (888) 346-3151
Email: butler@thebutlerfirm.com


NORMAN A. ZABLE
A PROFESSIONAL CORPORATION

By:   /s/ Norman A. Zable_____
   Norman A. Zable
   Texas Bar No. 22236000

5492 La Sierra Drive
Dallas, Texas 75231
Phone: (972) 386-6900
Fax:  (972) 386-7315
Email: nzable@zablelaw.com

ATTORNEYS FOR PLAINTIFFS
BASKIN-ROBBINS FRANCHISED SHOPS
LLC AND BR IP HOLDER LLC

PLEASE ISSUE SUMMONS TO:

Cool Enterprises, LLC
through its registered agent,
Adam Zarafshani
4210 Spicewood Spring Road, Suite 205
Austin, Texas 78759

Mark E. Schiffgens
2506 Roxmoor Drive
Austin, Texas 78723

Adam Zarafshani
4210 Spicewood Spring Road, Suite 205
Austin, Texas 78759

Conleth S. O'Connell, Jr.
10808 Straw Flower Drive
Austin, Texas 78733